UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

JAE LEE,

                Plaintiff,

        v.

DELTA AIRLINES, INC., JOHN DOE, and
JANE DOE,

               Defendants.

-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

20-CV-01705 (WFK) (LGD)

**LEE G. DUNST**, Magistrate Judge:

On April 6, 2020, *pro se* plaintiff (and currently a practicing attorney in New York State) Jae

Lee ("Plaintiff") commenced this action against defendants Delta Airlines, Inc. ("Delta"), John Doe,

and Jane Doe asserting various claims under federal and New York law "to redress racial

discrimination" that Plaintiff reportedly suffered when she was a passenger on a Delta flight from

Charlotte, North Carolina to New York City on August 28, 2019.  Electronic Case File Number ("ECF

No.") 1 ("Complaint" or "Compl.") ¶ 1.  For the more than two years that followed, the parties

completed discovery and briefed Delta's motion for summary judgment.  On August 29, 2022,

following those efforts and with Delta's recently-filed summary judgment motion still pending before

District Judge William F. Kuntz, II, Plaintiff sought leave to amend the Complaint by (1) substituting

two named parties for the two Doe defendants, (2) asserting new factual allegations, (3) adding three

state-law causes of action based on the new allegations, and (4) withdrawing two federal law and two

New York law causes of action (the "Motion").  *See* ECF No. 70 ("Pl. Mem.").  Pursuant to Judge

Kuntz's September 6, 2022 referral for a Report and Recommendation, the undersigned respectfully

recommends that the Court grant in part and deny in part Plaintiff's Motion for the reasons set forth

herein.

## I.    BACKGROUND

### A.    Relevant Alleged Facts

Unless otherwise noted, the alleged facts set forth herein are taken from Plaintiff's proposed First Amended Complaint, attached to the Motion at ECF No. 70-1 ("PFAC").

*Pro se* Plaintiff is an attorney who describes herself as "a well-respected Korean-American in her community" of Nassau County, New York.[1]  PFAC ¶ 7; *see* ECF No. 55-4 at 5:14-17, 19:14-21:15 (Plaintiff's deposition testimony confirming she is an attorney practicing law in New York through her firm, JSL Law Offices, P.C.); ECF No. 53 (Plaintiff's letter to the Court on JSL Law Offices, P.C. letterhead confirming her *pro se* status).[2]  Defendant Delta is an air carrier based out of Atlanta, Georgia that engages in the business of transporting passengers.  PFAC ¶ 8.  Proposed defendants Marriot Loret ("Loret") and Ayman Eid ("Eid") were employees, agents, or representatives of Delta on August 28, 2019.  *Id.* ¶¶ 9-10.

On May 27, 2019, Plaintiff purchased a first class ticket for a Delta flight scheduled to depart Charlotte, North Carolina for New York City on August 28, 2019 at 8:00 p.m.  *Id.* ¶ 11.  On August 28, 2019, Plaintiff arrived at the Charlotte, North Carolina airport approximately two hours before her scheduled flight.  *Id.* ¶¶ 12-13.  An unidentified Delta counter attendant then urged Plaintiff to switch to a still-present flight scheduled to depart for New York City at 6:00 p.m. "so that other customers of Delta who arrived late could take Plaintiff's 8[:00 p.m.] flight."  *Id.* ¶¶ 13, 16.  Plaintiff agreed to take

---

[1] The Court takes judicial notice of Plaintiff's publicly available attorney registration with the New York State Unified Court System.  *See Attorney Online Services – Search*, N.Y. STATE UNIFIED CT. SYS., https://iapps.courts.state.ny.us/attorneyservices/search?tab=attorney (type "Jae Soog" into the "First Name" box, type "Lee" in the "Last Name" box, click "Search" button, and then click the "LEE, JAE SOOG" hyperlink on the resulting page) (last visited Mar. 13, 2023) (showing Plaintiff is an attorney admitted in New York since June 28, 2005 with Registration Number 4323564); *Capitol Recs., LLC v. ReDigi Inc.*, No. 12-CV-95, 2022 WL 3348385, at *3 (S.D.N.Y. Aug. 12, 2022) (taking judicial notice of attorney's registration); *Himmelfarb v. Nat'l Bureau Collection Corp.*, No. 17-CV-4744, 2018 WL 4921662, at *3 (E.D.N.Y. Aug. 10, 2018) (same).

[2] Plaintiff's law firm biography states Plaintiff earned an S.J.D from the University of Wisconsin-Madison Law School, and an MBA from the New York University School of Business.  *See Attorney Jae S. Lee*, JSL LAW OFFICES, P.C., http://lawjsl.com/en/about/jlee.html (last visited Mar. 13, 2023).

the earlier flight. *Id*. ¶ 17. The Delta agent then gave Plaintiff a first class ticket for seat 1C on the 6:00 p.m. flight and arranged for the plane to wait for Plaintiff and her luggage. *Id*. ¶¶ 15, 17.

Upon arriving at the boarding gate, Plaintiff "saw a young white passenger" waiting to see if any seats were available on the plane. *Id*. ¶ 18. After Plaintiff's boarding pass was accepted at the boarding gate, Loret allegedly stopped Plaintiff and said "ASIAN! [F]irst class? . . . you should not sit at the first class. You should go to an economy seat." *Id*. ¶ 19. Plaintiff nonetheless boarded the plane and sat in her assigned first class seat. Thereafter, an unidentified flight attendant asked Plaintiff to move to an economy seat so that "a young white woman" standing in front of Plaintiff could take Plaintiff's first class seat. *Id*. ¶¶ 20- 21. Plaintiff declined to move and showed the flight attendant her ticket for seat 1C. *Id*. ¶ 22. Minutes later, Loret reportedly "yelled" at Plaintiff, saying "[y]ou must move to an economy seat so that the white girl can sit in your seat. Or, you must get off and wait for the next flight." *Id*. ¶ 23. Plaintiff responded that she originally purchased a first class ticket for the 8:00 p.m. flight and exchanged it for the first class ticket for seat 1C on the 6:00 p.m. flight. *Id*. ¶ 24. Plaintiff also requested to see "the white passenger's ticket." *Id*. ¶ 26. Nonetheless, according to Plaintiff, Loret directed Plaintiff to leave the aircraft; "suddenly grabbed Plaintiff's neck, arms and shoulders to forcedly remove Plaintiff" from seat 1C; and declined to allow Plaintiff to see the flight captain. *Id*. ¶¶ 25-29.

Plaintiff's interaction with Loret lasted approximately thirty minutes. *Id*. ¶ 30. Thereafter, Eid, a "Red Coat Supervisor,"[3] approached Plaintiff, directed her to exit the plane, and "grabbed Plaintiff's arm and shoulders to forcedly remove Plaintiff." *Id*. ¶ 31. Plaintiff again requested to see "the white passenger's ticket." *Id*. ¶ 32. Eid checked the other passenger's ticket, reported that the other passenger did not have a first class ticket, and apologized to Plaintiff. *Id*. ¶ 33. Ultimately,

---

[3] The PFAC does not define the term "Red Coat Supervisor." Delta's website reports that "Red Coats" are "Delta's elite airport customer service experts, identifiable by their bright red coats. They are specially trained to handle on-the-stop customer issues." Staff Writer, *Red Coats*, DELTA (Mar. 20, 2013), https://news.delta.com/red-coats.

Plaintiff kept seat 1C, the flight took off nearly one hour after its scheduled departure time, and two flight attendants apologized to Plaintiff and confirmed that "the white passenger had not purchased a first class ticket." *Id.* ¶¶ 34-36.

**B.    Relevant Procedural History**

1.    The Original Complaint

On April 6, 2020, Plaintiff commenced this action against Delta and two Doe defendants, John Doe and Jane Doe,[4] asserting four causes of action: (1) discrimination by a recipient of federal funding in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (2) discrimination by an air carrier in violation of Federal Aviation Law, 49 U.S.C. § 40127; (3) racial discrimination through disparate treatment in performance of a contract, in violation of N.Y. EXEC. LAW § 296; and (4) deprivation of access to or discrimination in furnishing of a public accommodation in violation of N.Y. CIV. RIGHTS LAW §§ 40 *et seq. See* Compl. ¶¶ 34-61.  On August 21, 2020, Delta answered the complaint.  ECF No. 8.

2.    Discovery

On September 8, 2020, Magistrate Judge Steven Tiscione, to whom this case was then assigned,[5] set a discovery schedule that included December 4, 2020 as the "[d]eadline for motions to join new parties or amend pleadings."  ECF No. 12.  Plaintiff did not file any motion to join new parties or amend the pleadings prior to December 4, 2020.  The parties then engaged in discovery and received several extensions to the schedule over time, but not the December 4, 2020 deadline for motions to join new parties or amend pleadings.  *See* ECF Nos. 21, 28, 31.  On February 5, 2022, Plaintiff filed the final motion to extend the discovery deadline and sought leave to depose non-party Delta flight attendant Sheri H. Critchfield by written questions under Federal Rule of Civil Procedure

---

[4] The naming of defendant "JONE" Doe in the Complaint's caption apparently was in error.  The body of the Complaint refers to that defendant by the customary name "JOHN" Doe.  Compl. ¶ 1.

[5] On June 14, 2022, this case was reassigned to the undersigned.  *See* June 14, 2022 Notice Of Reassignment.

("Rule") 31.[6]  ECF No. 38; *see also* ECF No. 39 (Delta's opposition).  On February 16, 2022, Judge Tiscione granted Plaintiff's motion and ordered the parties to complete discovery by March 31, 2022. ECF No. 40.

On April 6, 2022, Delta filed a motion for a protective order precluding Plaintiff from offering in "any motion, hearing, or at trial" the deposition upon written questions of Ms. Critchfield dated March 31, 2022 ("Critchfield Deposition").  ECF No. 43; *see also* April 12, 2022 Order (granting Delta's motion to file the Critchfield Deposition under seal).  On May 9, 2022, Judge Tiscione granted Delta's motion for a protective order because (1) "Plaintiff failed to comply with the notice requirements of Rule 31(a)(3), depriving Defendants of the opportunity to provide their own written questions as contemplated in Rule 31(a)(5)," and (2) the Critchfield Deposition violated Rule 30(c), (e), and (f), as well as Rule 31(b)(1) because no deposition officer was present to swear Ms. Critchfield, certify that Ms. Critchfield was duly sworn, take Ms. Critchfield's verbatim testimony, and certify that the deposition accurately recorded Ms. Critchfield's testimony.  ECF No. 49.  Judge Tiscione further held that "Plaintiff is precluded from offering the purported deposition upon written questions for any purpose in this litigation" and prohibited Plaintiff from using the Critchfield Deposition as a witness affidavit "because the document does not conform to the requirements for a sworn affidavit."  *Id*.  Plaintiff did not object to Judge Tiscione's ruling regarding the Critchfield Deposition.

### 3.    Delta's Motion For Summary Judgement And Plaintiff's Motion To Amend

On June 7, 2022, Judge Kuntz granted Delta's request to file a summary judgment motion and set a briefing schedule requiring the parties to file all their submissions by August 26, 2022 at 5:00

---

[6] Plaintiff reported that Ms. Critchfield "sustained injuries in an accident and it appears that she is unable to sit for a deposition, even remotely."  ECF No. 38.

p.m.[7]  ECF No. 51.  Three days after the deadline for submission of summary judgment briefing, on August 29, 2022, Plaintiff filed a motion to amend the Complaint and a motion for leave to file a sur-reply in connection with Delta's motion for summary judgment.  ECF Nos. 58, 59; *see also* ECF No. 61 (Delta's opposition to Plaintiff's August 29, 2022 motions).  On September 6, 2022, Judge Kuntz granted Plaintiff leave to file a sur-reply in connection with Delta's motion for summary judgment and referred Plaintiff's motion to amend the Complaint to the undersigned for a Report and Recommendation.[8]  ECF No. 62.

On September 8, 2022, the undersigned directed the parties to (among other things) meet and confer about Plaintiff's motion to amend and provide a joint proposed briefing schedule.  *See* September 8, 2022 Order.  On September 15, 2022, the parties provided their joint proposed briefing schedule.  ECF No. 65.  On September 16, 2022, the undersigned adopted the parties' proposed briefing schedule and denied Plaintiff's prior motion to amend at ECF No. 58 as moot because the Court adopted the parties' briefing schedule for the instant Motion seeking the same relief.  *See* September 16, 2022 Order.  The parties filed their submissions in connection with the instant Motion on October 7, 2022.  *See* Pl. Mem.; PFAC; ECF No. 71 ("Opposition" or "Opp.").

### 4.    The PFAC

The PFAC differs from the Complaint in four key respects.[9]  First, the PFAC substitutes Loret and Eid for Jane Doe and John Doe, respectively.  *Compare* Compl. ¶ 1 (Jane Doe was a Delta "gate agent" and John Doe was her "supervisor") *with* PFAC ¶ 1 (alleging the Delta "gate agent" was "later

---

[7]  Delta timely filed its summary judgment submissions on August 26, 2022.  ECF Nos. 55-57.  Plaintiff filed her submissions opposing summary judgment five days later, on August 31, 2022.  ECF No. 60.

[8]  As of the date of this Report and Recommendation, Delta's motion for summary judgment is still pending.

[9]  The PFAC also differs from the Complaint as it asserts a cause of action for interference with the right to make and enforce contracts on an equal basis regardless of race, in violation of 42 U.S.C. § 1981.  PFAC ¶¶ 44-49.  The Complaint alleged in its second paragraph that "Defendants' actions were . . . in violation of 42 U.S.C. § 1981" but, in contrast to the PFAC, did not set out a related cause of action.  Compl. ¶ 2.  Given that the parties' summary judgment briefing treats the Complaint as having asserted a Section 1981 cause of action, this Report and Recommendation does the same.  *See* ECF No. 55-9 at 10-16; ECF No. 56-7 at 3-14; ECF No. 60 at 7-9.

identified" as Loret, and the Delta "Red Coat Supervisor" was "later identified" as Eid). Second, the PFAC asserts new allegations—including that Loret and Eid physically touched Plaintiff and made certain statements in addition to those previously alleged in the Complaint. *Compare* Compl. ¶¶ 19-33 *with* PFAC ¶¶ 11-43. For example, the PFAC asserts for the first time that Loret stopped Plaintiff and allegedly said "ASIAN! [F]irst class? . . . you should not sit at the first class. You should go to an economy seat." PFAC ¶ 19. Third, the PFAC asserts three causes of action under unspecified state law: (1) breach of contract, (2) assault and battery, and (3) intentional/negligent infliction of emotional distress.[10] PFAC ¶¶ 50-67. Fourth, in the PFAC, Plaintiff no longer asserts violations of 42 U.S.C. § 2000d, 49 U.S.C. § 40127, N.Y. EXEC. LAW § 296, or N.Y. CIV. RIGHTS LAW §§ 40 *et seq*. *See generally* PFAC; *see also* Pl. Mem. at 1 (explaining that the Motion seeks to "withdraw the causes of action pursuant to Title VI of the Civil Rights Act of 1964. the Federal Aviation Law, the New York Executive Law, and the New York Civil Rights Law").

## II.    LEGAL STANDARDS

### A.    Amending The Complaint

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought."[11] *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). The parties dispute which standard governs amending the PFAC. Plaintiff argues

---

[10] These claims are asserted as the PFAC's second, third, and fourth causes of action, respectively.

[11] As the Second Circuit explained in *Sacerdote*,

At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends . . . the plaintiff must move the court for leave to amend, but the court should grant such leave "freely when justice so requires" pursuant to Rule 15(a)(2) . . . The period of liberal amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

9 F.4th at 115 (internal alterations omitted).

that Rule 15(a)(2) controls, while Delta argues that Rule 16(b)(4) is the applicable standard. *See* Pl. Mem. at 2-3; Opp. at 1-5. Rule 15(a)(2) states that a party may amend its pleading with leave of the Court and that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 16(b)(4) provides that a party must show "good cause" to amend a complaint or join additional parties after a scheduling order's time limit for doing so expires. Fed. R. Civ. P. 16(b)(4). The latter rule applies after the court-ordered "date after which no amendment will be permitted." *Sacerdote*, 9 F.4th at 115.

As noted above, Judge Tiscione's September 8, 2020 scheduling order set December 4, 2020 as the "[d]eadline for motions to join new parties or amend pleadings." ECF No. 12. Plaintiff contends Rule 15 applies to the instant motion because the scheduling order "like the one in *Sacerdote*, does not specifically set an expiration date after which all amendments were prohibited." Pl. Mem. at 2 (parentheses omitted). Delta argues that "[u]nlike the circumstances in *Sacerdote*, the Scheduling Order . . . sets a 'Deadline for <u>motions</u> to join new parties or amend pleadings.'"[12] Opp. at 2 (quoting ECF No. 12). Courts that most recently applied *Sacerdote* agree with Delta and have held that Rule 16 governs motions to amend pleadings or join additional parties filed after a stated deadline for such "motions"—even where the scheduling order did not specify that later-filed motions were prohibited or must satisfy Rule 16.[13] *S. Beach Skin Care, Inc. v. Event Fashion Footwear, Inc.*, No. 21-CV-3135, 2023 WL 382431, at *3 (E.D.N.Y. Jan. 24, 2023) (Bulsara, M.J.); *Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-02266, 2022 WL 18107432, at *1 (S.D.N.Y. Dec. 15, 2022) (Halpern, J.);

---

[12] The scheduling order in *Sacerdote* "set the deadline . . . for amending *without* leave of court." 9 F.4th at 115.

[13] In an earlier-issued case, the undersigned strictly construed *Sacerdote*. *See Domni v. Cnty. of Nassau*, No. 19-CV-00083, 2022 WL 18542486, at *5 (E.D.N.Y. Nov. 16, 2022) (Dunst, M.J.) (applying Rule 15 where the scheduling order "set no expiration date after which all amendments were prohibited" (quoting *Sacerdote*, 9 F.4th at 115)), *report and recommendation adopted*, 2023 WL 1382390 (E.D.N.Y. Jan. 31, 2023); *see also Sacerdote*, 9 F.4th at 116 ("District courts wishing to evaluate motions for leave to amend under Rule 16 after a particular date need only . . . state that no amendment will be permitted after that date in order to trigger the Rule 16 standard."). The undersigned's earlier decision in *Domni* would not affect the conclusion of this Report and Recommendation because, as explained below, the undersigned recommends denying the motion even if Rule 15 applies as urged by Plaintiff.

*Jurez v. Cent. Yetev Lev D'Satmar Meat, Inc.*, No. 21-CV-2633, 2022 WL 17245486, at *3 (E.D.N.Y. Nov. 21, 2022) (Bulsara, M.J.); *Anzovino v. Wingate of Dutchess, Inc.*, No. 21-CV-7625, 2022 WL 17076750, at *3 (S.D.N.Y. Nov. 18, 2022) (Krause, M.J.).[14]  The undersigned agrees with these recent decisions that Rule 16 applies here in evaluating the Motion.

###     B.    Joinder Of Parties

Rule 21 "provides the standard for adding new defendants in an amended pleading," and thus applies to the extent the PFAC seeks to substitute Loret and Eid for the original Doe defendants in the Complaint.  *Capak v. Epps*, No. 18-CV-4325, 2020 WL 2543092, at *3 (S.D.N.Y. Apr. 7, 2020), *report and recommendation adopted*, 2020 WL 2538998 (S.D.N.Y. May 19, 2020); *see Tardif v. City of New York*, No. 13-CV4056-, 2016 WL 2343861, at *3 & n.3 (S.D.N.Y. May 3, 2016) (applying Rule 21 to motion to amend because it sought to substitute named individuals for Doe defendants). That rule provides that "[o] n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "Rule 21 is read in conjunction with [Rule 20], which provides that a defendant may be joined if 'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences' and 'any question of law or fact common to all defendants will arise in the action.'" *Capak*, 2020 WL 2543092, at *3 (quoting Fed. R. Civ. P. 20).  A motion to join new parties filed after the time to do so has expired must show the same "good cause" that applies under Rule 16.  *Id*.; *see Williams v. Town of Hempstead*, No. 16-CV-1992, 2017 WL 4712219, at *4 (E.D.N.Y. Oct. 18, 2017) (declining to address Rule 21 because plaintiff failed to show "good cause" for the motion); *Ahmed v. Astoria Bank*, No. 14-CV-4595, 2015 WL 4394072, at *2 & n.2 (E.D.N.Y. July 16, 2015) (same).

---

[14] Of course, courts have also followed *Sacerdote* by applying Rule 16 to motions filed after a deadline that *expressly* triggered "good cause" review.  *See BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC*, No. 20-CV-1056, 2022 WL 3714597, at *4 (D. Conn. Aug. 29, 2022) (applying Rule 16 where scheduling order specified "good cause" must be shown after the deadline); *Austin Air Sys., Ltd. v. Sager Elec. Supply Co., Inc.*, No. 19-CV-562, 2022 WL 464230, at *6 (W.D.N.Y. Feb. 15, 2022) (same).

Once good cause is shown, or if the motion is filed before good cause must be shown, "[t]he same liberal standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21." *Capak*, 2020 WL 2543092, at *3; *see Omar v. 1 Front St. Grimaldi, Inc.*, No. 16-CV-5824, 2018 WL 2121550, at *3 (E.D.N.Y. May 8, 2018) ("[C]ourts have held that there is in practical terms little difference between [Rule 20, Rule 21,] and Rule 15" (internal quotations omitted)).

### C.   Withdrawing Claims

"The Second Circuit . . . has stated that 'the district court may permit withdrawal of a claim under Rule 15 subject to the same standard of review as a withdrawal under Rule 41(a).'" *Seidman v. Chobani, LLC*, No. 14-CV-4050, 2016 WL 1271066, at *2 (S.D.N.Y. Mar. 29, 2016) (quoting *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 n.4 (2d Cir. 1985)) (internal alterations omitted). Rule 41 provides, in relevant part, that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "District courts in this Circuit have interpreted this to mean that . . . 'there is no substantive difference'" between analyzing a motion to dismiss claims and a motion to file an amended pleading that lacks previously asserted claims. *Thorpe v. City of New York*, No. 19-CV-5995, 2022 WL 3112125, at *1 (S.D.N.Y. Aug. 4, 2022) (quoting *Seidman*, 2016 WL 1271066, at *2). Accordingly, this Report and Recommendation looks to Rule 41 jurisprudence in analyzing Plaintiff's request to withdraw certain claims.

### D.   Plaintiff's Pro Se Status

Typically, a *pro se* litigant is afforded a "degree of solicitude" because he "generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). That is not the case here. Plaintiff is an attorney practicing law in New York State and has been authorized to do so for nearly two decades. *See* ECF No. 55-4 at 5:14-17, 17:14-21:15 (Plaintiff's deposition testimony confirming she is an attorney, has been admitted in New York since

2005, and presently practices law through her firm, JSL Law Offices, P.C.). "[A] lawyer representing himself ordinarily receives no such solicitude at all." *Tracy*, 623 F.3d at 101; *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys . . . typically cannot claim the special consideration which the courts customarily grant to *pro se* parties." (internal quotations omitted)). Accordingly, the undersigned will not grant solicitude to Plaintiff due to her *pro se* status. *See Bank v. Alarm.com Holdings, Inc.*, 828 F. App'x 5, 7 (2d Cir. 2020) (declining to extend "any special solicitude" to *pro se* attorney plaintiff); *see Knopf v. Esposito*, 803 F. App'x 448, 454 n.1 (2d Cir. 2020) (declining to extend "special solicitude" to *pro se* attorney defendants).

## III.   DISCUSSION

The undersigned recommends that the Court deny the Motion to the extent that it seeks leave to file the PFAC, and grant the Motion to the extent it seeks to withdraw certain causes of action asserted in the Complaint.

### A.   The Motion Is Insufficient To Add New Parties, New Factual Allegations, And New Causes Of Action

#### 1.   Plaintiff Failed To Show The Requisite Good Cause To Amend The Complaint

Rule 16(b) provides that "[a] schedule may be modified *only for good cause* and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). "[T]he rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000) (internal quotations omitted). Rule 16 must be satisfied before the Court considers whether to allow amendment under Rule 15 and joinder under Rule 21. *See S. Beach Skin Care*, 2023 WL 382431, at *2 (holding that Rule 16 "must be satisfied before determining whether an amendment should be permitted under Rule 15"); *Williams*, 2017 WL 4712219, at *4 ("[T]he Plaintiff's failure to demonstrate good cause precludes the need for the Court to address Rule 15 or Rule 21."); *Ahmed*, 2015 WL 4394072, at *2 & n.2 (declining to address Rules 15 and 21 because plaintiff failed to show

the requisite "good cause" under Rule 16).

"[A] finding of 'good cause' depends on the diligence of the moving party." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009) (quoting *Parker*, 204 F.3d at 340). This requires Plaintiff to show that "despite [her] having exercised diligence, the applicable deadline could not have been reasonably met." *S. Beach Skin Care*, 2023 WL 382431, at *2 (quoting *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010)). That showing principally turns on "whether '[Plaintiff] knew, or should have known,' the information sought to be added to the pleading" before the deadline in the scheduling order. *Ahmed*, 2015 WL 4394072, at *3 (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)); *see Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014) (explaining that a party "fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline" (internal quotations omitted)).

Plaintiff failed to perform the requisite diligence in bringing the instant Motion because she was aware of the amendments propounded in the PFAC long before the amendment deadline. First, on October 8, 2020—*nearly two months* before the December 4, 2020 amendment deadline *and over twenty-two months* before Plaintiff first moved to amend—Delta disclosed under Rule 26(a)(1) that Loret was the "Gate Agent" and Eid was the "Red Coat" described in the Complaint. ECF No. 71-2. This shows a lack of diligence by Plaintiff in not seeking to amend the Complaint much earlier to name these defendants. *See Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) ("The district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning the officers' names failed to demonstrate the diligence necessary to satisfy Rule 16."); *S. Beach Skin Care*, 2023 WL 382431, at *4 (finding no good cause for amendment where Plaintiff received the proposed new defendant's identity from discovery before the amendment deadline). Second, the PFAC's new factual allegations and state law causes of action concern conduct

that Plaintiff allegedly experienced on the August 28, 2019 flight, which could have been asserted in the Complaint on April 6, 2020 and certainly before the December 4, 2020 deadline; there is no justification for Plaintiff waiting to seek leave to amend over fifteen months later. *See* PFAC ¶¶ 11-67; *Essani v. Earley*, No. 13-CV-3424, 2018 WL 3785109, at *7 (E.D.N.Y. Aug. 9, 2018) (finding no good cause for amendment where "the new facts and claims therein are predicated solely upon information that [plaintiff] knew, or should have known, in advance of the [amendment] deadline, because they pertain to the precise events giving rise to the claims asserted in the original Complaint"), *report and recommendation adopted*, 2018 WL 4100483 (E.D.N.Y. Aug. 28, 2018); *Ahmed*, 2015 WL 4394072, at *3 (finding plaintiff could not demonstrate good cause because she "was aware of the 'new' facts at the time they occurred").

Plaintiff's argument that she has demonstrated good cause lacks merit. Plaintiff asserts that the PFAC "reflect[s] information set forth in a witness affidavit that was not available to [Plaintiff] until July 29, 2022." Pl. Mem. at 3. This belies credulity given that, as just explained, Plaintiff knew the identities of the Doe defendants and the circumstances giving rise to her proposed new allegations and state law causes of action *well before* the deadline to amend the Complaint expired.[15] Plaintiff also erroneously asserts that the state law causes of action are proper because supplemental jurisdiction was "already alleged in the original complaint at para. 4." Pl. Mem. at 1. But that paragraph of the Complaint generically asserts that the Court has supplemental jurisdiction "over any and all State law claims and causes of action which derive from the same nucleus of operative facts . . . ." Compl. ¶ 4. The Complaint's fourth paragraph "failed to explicate [its] passing reference to supplemental jurisdiction—let alone describe the elements of the unspecified state cause of action."

---

[15] This argument further fails to the extent it is based upon the July 29, 2022 affidavit of Sheri Critchfield, the only affidavit Plaintiff submitted (other than her own) in opposition to Delta's motion for summary judgment. *See* ECF No. 60-2. The undersigned need not determine whether the affidavit contravenes Judge Tiscione's Order prohibiting Plaintiff from using the Critchfield Deposition as an affidavit (*see* Opp. at 5; ECF No. 49) because the affidavit contains information Plaintiff knew or should have known at the time of the incident given that it purports to be a witness account of what happened to Plaintiff on the August 28, 2019 flight. *See* ECF No. 60-2.

*Hop Hing Produces Inc. v. Lin Zhang Trading Co.*, No. 11-CV-03259, 2013 WL 3990761, at *2 n.4 (E.D.N.Y. Aug. 5, 2013) (declining to consider any state law causes of action); *see also Hill v. Gunn*, 367 F. Supp. 2d 532, 536 (S.D.N.Y. 2005) ("I need not reach Plaintiff's state law claims—whatever they may be."); ECF No. 55-4 at 99:24-100:12 (Plaintiff testifying that the Complaint neither alleged Loret touched Plaintiff nor asserted a battery cause of action).

Accordingly, Plaintiff has not met her burden to show the necessary good cause under Rule 16(b)(4) to amend the Complaint.[16]

### 2.   The PFAC Reflects Undue Delay And Would Impose Prejudice

Even if Plaintiff had shown "good cause" under Rule 16 to excuse her failure to move to amend before the court-ordered deadline, the undersigned would still recommend denying the Motion under the more lenient Rule 15 standard. *See Abrams v. HBM Prenscia Inc.*, No. 19-CV-10357, 2020 WL 6482881, at *2 (S.D.N.Y. Nov. 4, 2020) ("[O]nly if the moving party can show good cause for his failure to meet the amendment deadline would the Court need to consider whether the proposed amendment . . . [satisfies] the Rule 15(a) standards that otherwise govern motions to amend" (internal quotations omitted)); *Tardif*, 2016 WL 2343861, at *4 ("[A] court first considers whether the movant has shown good cause under Rule 16, and, only after finding that the good cause standard is met, proceeds to the analysis under Rule 15.").

"Although [Rule] 15(a) provides that leave to amend a complaint shall be freely given when justice so requires, district courts may deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 247 (2d Cir. 2021) (internal quotations omitted). "The burden to explain a delay is on the party

---

[16] While the movant's "diligence" is the "primary consideration," the Court's Rule 16 analysis may also consider "whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) ("We will find good cause where the moving party has demonstrated diligence, and the amendment would not significantly prejudice the nonmoving party" (citation omitted)).  Amendment is also inappropriate for the reasons explained in the discussion of prejudice in connection with Rule 15, as set forth herein.

that seeks leave to amend." *United States ex rel. Raffington v. Bon Secours Health Sys.*, 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021) (quoting *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998)). "[T]he non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." *Id*. (internal quotations omitted). Absent one of these circumstances, "the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Delta argues that all of these grounds defeat the Motion. *See* Opp. at 2-5. The Court agrees that the PFAC reflects undue delay and would impose prejudice.

a)    *Undue Delay*

Delta argues that Plaintiff unduly delayed in filing the Motion because she "waited one year and nine months after the deadline for motions to amend or add parties, and after Delta fully briefed [summary judgment] to seek such amendment." *Id*. at 3. The Second Circuit has "held repeatedly that mere delay is not, of itself, sufficient to justify denial of a Rule 15(a) motion." *Parker*, 204 F.3d at 339. However, "[t]he concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Nat'l Credit Union Admin. Bd. v. HSBC Bank US, Nat'l Ass'n*, 331 F.R.D. 63, 70 (S.D.N.Y. 2019) (internal quotations omitted); *see Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) ("[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotations omitted)). In other words, "[w]hen a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." *Park B. Smith, Inc. v. CHF Indus.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) (internal quotations omitted).

As explained above, the PFAC seeks to (1) add state law claims and supporting allegations Plaintiff could have asserted when she commenced this litigation over two years before seeking to amend, and (2) add Loret and Eid as new defendants even though their identities were disclosed to Plaintiff twenty-two months before she sought leave to amend.  The Court concludes that these circumstances reflect undue delay.  *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (finding undue delay where plaintiff moved to amend after summary judgment briefing commenced and over 17 months after filing suit to add information he should have known from the start); *Boyd v. Doe #1*, No. 18-CV-1333, 2021 WL 7542409, at \*22 (N.D.N.Y. Nov. 30, 2021) (finding undue delay where plaintiff moved to replace Doe defendants over one year after learning their identities), *report and recommendation adopted*, 2022 WL 823648 (N.D.N.Y. Mar. 18, 2022); *Davidowitz v. Patridge*, No. 08-CV-6962, 2010 WL 1779279, at \*3 (S.D.N.Y. Apr. 23, 2010) (finding motion to amend was "unquestionably, after undue delay" because it sought to add "allegations that he could have made when he filed his third-party complaint" thirteen months earlier).

        b)    *Prejudice*

Prejudice to the nonmovant is "among the 'most important' reasons to deny leave to amend" under Rule 15.  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see Lynch v. Nat'l Prescription Adm'rs, Inc.*, 795 F. App'x 68, 70 (2d Cir. 2020) (similar).  Prejudice depends on, "among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."  *Lynch*, 795 F. App'x at 70 (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008)).  Delta invokes this standard, contending that the Motion will impose prejudice if granted because it would (1) eliminate the parties' efforts and progress to date—namely completing discovery and briefing summary judgment—by "caus[ing] Delta and the contemplated new parties to reopen and

conduct a significant amount of additional discovery" and (2) "significantly delay the resolution of the instant action" because "no discovery has been conducted concerning the new causes of action."  Opp. at 3-4.

Courts are "particularly likely to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment." *Werking*, 526 F. App'x at 96; *see Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) ("A proposed amendment is especially prejudicial when discovery had already been completed and non-movant had already filed a motion for summary judgment" (internal alterations omitted)).  For that reason, "[t]here are numerous instances in which motions for leave to amend were denied because discovery had already been completed and post-discovery motions for summary judgment had been submitted." *Kenney v. Clay*, 172 F. Supp. 3d 628, 643 (N.D.N.Y. 2016) (collecting cases).  Because those circumstances are present here, allowing Plaintiff to file the PFAC would clearly prejudice Delta.  *See, e.g., AEP Energy*, 626 F.3d at 726-27 (affirming denial of motion to amend because it was filed "years after the commencement of the lawsuit and . . . the defendants had already filed summary judgment papers"); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (affirming denial of motion to amend filed when "discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the original complaint"); *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (affirming denial of motion to amend where "plaintiffs delayed more than one year before seeking to amend their complaint" and "when the motion was filed, discovery had been completed and a summary judgment motion was pending").

Plaintiff's effort to overcome the showing of prejudice is unavailing.  According to Plaintiff, "no additional discovery is necessary for the additional causes of action, and thus there can be no prejudice to Defendants if the Court permits the amendment."  Pl. Mem. at 2.  This contention fails as a matter of law and logic.  As Delta points out, though there has been discovery about the facts

underlying the Complaint (which undoubtedly has some overlap with the PFAC), "no discovery has been conducted concerning the new causes of action." Opp. at 4; *see id*. at 5 (describing how the PFAC's new claims necessitate discovery concerning Plaintiff's medical records). Plaintiff ignores that discovery "is not a one-way street designed to allow plaintiffs to collect evidence in support of their claims. It is also a mechanism for defendants to accumulate evidence to defend themselves and to test the evidence of their opponents." *Fioranelli v. CBS Broad., Inc.*, No. 15-CV-952, 2019 WL 1059993, at *5 (S.D.N.Y. Mar. 6, 2019) (internal quotations omitted) (denying motion to amend); *Davidowitz v. Patridge*, No. 08-CV-6962, 2010 WL 1779279, at *5 (S.D.N.Y. Apr. 23, 2010) (denying motion to amend). In addition, as Delta further asserted, permitting Plaintiff to file the PFAC would require reopening discovery to account for the addition of Loret and Eid.[17] *See* Opp. at 4 ("[T]he addition of new parties who could be personally liable to Plaintiff will require the Court to reopen discovery."); *Sorenson v. Wolfson*, No. 10-CV-4596, 2014 WL 3293537, at *10 (S.D.N.Y. July 8, 2014) ("[A]llowing Sorenson to add parties who would be entitled to discovery in order to prepare their defenses, and to add claims which could have been dealt with in the previous motion for summary judgment, would prejudice the defendant by significantly delaying the resolution of this dispute."); *Davidowitz*, 2010 WL 1779279, at *5 (rejecting proposed amendment partly because the proposed new party "would need discovery on the claims against him," which would further delay the case).

---

[17] Delay could also be exacerbated by further motion practice seeking to dismiss the new claims. "[I]t is clear that Plaintiff's proposed amendment would lead to additional motion practice, as [Delta] proffer[s] . . . numerous reasons why the amendment fails to state a claim on which relief may be granted." *Fioranelli*, 2019 WL 1059993, at *5; *see* Opp. at 4-5 (providing lengthy arguments that the PFAC fails to state a claim). And if the Motion were granted, Loret and Eid may exercise their right to seek dismissal of the claims against them, which would further delay this case. *See Davidowitz*, 2010 WL 1779279, at *5 (declining motion to amend partly because the proposed new party "might well wish to file a motion to dismiss some (or all) of the claims being asserted against him," which would further delay the case).

*               *               *

For the foregoing reasons, the undersigned concludes that the Motion fails to satisfy Rule 15 to the extent it seeks to add new parties, factual allegations, and causes of action because it would impose prejudice and cause undue delay.  Given that finding, this Report and Recommendation need not reach Delta's bad faith and futility arguments.[18]  *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-CV-2542, 2020 WL 3256871, at *5 (S.D.N.Y. June 16, 2020) (declining to reach futility arguments because proposed amendment was unduly delayed and prejudicial), *aff'd*, 336 F.R.D. 400 (S.D.N.Y. 2020); *Essani*, 2018 WL 3785109, at *8 n.13 (declining to reach bad faith and futility arguments because proposed amendment was unduly delayed and prejudicial); *Zucker v. Porteck Glob. Servs., Inc.*, No. 13-CV-2674, 2015 WL 6442414, at *8 (E.D.N.Y. Oct. 23, 2015) (declining to reach futility arguments because the motion to amend was unduly delayed and prejudicial).

**B.     The Motion Properly Seeks To Withdraw Claims Under Title VI Of The Civil Rights Act Of 1964, Federal Aviation Law, and New York Law**

The Motion seeks to "withdraw the causes of action pursuant to Title VI of the Civil Rights Act of 1964. the Federal Aviation Law, the New York Executive Law, and the New York Civil Rights Law" (the "Withdrawn Claims").  Pl. Mem at 1.  Withdrawal of those claims is proper and in the interest of judicial economy.  *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 140 (E.D.N.Y. 2017) (granting motion to amend to the extent plaintiff sought to withdraw her New

---

[18] "While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, a finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding that such an amendment is made in bad faith."  *Franco v. Diaz*, 51 F. Supp. 3d 235, 245 (E.D.N.Y. 2014) (internal quotations and alterations omitted).  Though this Report and Recommendation does not rely upon bad faith as a basis for recommending partial denial of the Motion, the undersigned notes that courts have found that filing a motion to amend close to summary judgment briefing reflects bad faith.  *See Presbyterian Church Of Sudan*, 582 F.3d at 267-68 (affirming denial of motion to amend where "plaintiffs acted in bad faith in waiting until the eve of summary judgment practice to file the motion to amend" (internal quotations omitted)); *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 304 (S.D.N.Y. 1996) (denying amendment as brought in bad faith because plaintiff filed it "[o]nly when defendants moved for summary judgment"), *aff'd*, 116 F.3d 465 (2d Cir. 1997).

York Fair Credit Reporting Act claim); *Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 461 (E.D.N.Y. 2017) (allowing plaintiff to withdraw her Family Medical Leave Act claim in connection with a motion to amend); *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 380 (E.D.N.Y. 2012) (granting motion to amend to withdraw conspiracy and equal protection claims because "Defendants do not oppose this portion of the motion").  That leaves the issue of whether the Withdrawn Claims should be dismissed with or without prejudice, which Plaintiff did not specify in her Motion.

**C.     The Withdrawn Claims Should Be Dismissed With Prejudice**

"Two lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (quoting *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006)).   The first "indicates that such a dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit."  *Id*. (quoting *Camilli*, 436 F.3d at 123).  "The second 'indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors.'" *Id*. (quoting *Camilli*, 436 F.3d at 123); *see Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).  The Court will address the Motion under both tests because the Motion "does not specify whether [Plaintiff] seeks dismissal of h[er] claims with or without prejudice." *Heyliger v. Cymbrak*, No. 17-CV-912-, 2019 WL 8491156, at *6 (N.D.N.Y. Dec. 16, 2019), *report and recommendation adopted*, 2020 WL 633199 (N.D.N.Y. Feb. 11, 2020).

1.     <u>Dismissal With Prejudice Is Not Necessary To Avoid A Plain Legal Prejudice</u>

"Plain legal prejudice" under *Camilli* addresses "the plight of a defendant who is ready to pursue a claim against the plaintiff *in the same action* that the plaintiff is seeking to have dismissed." 436 F.3d at 124.   It primarily "protect[s] a defendant's right to pursue an existing counterclaim in the same action that a plaintiff is trying to withdraw." *Id*.; *see Ascentive, LLC v. Opinion Corp.*, No. 10-

CV-4433, 2012 WL 1569573, at *2 (E.D.N.Y. May 3, 2012) ("[The Second] Circuit has explained, 'plain legal prejudice' exists 'when the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action'" (quoting *Camilli*, 436 F.3d at 124)).  Delta has not sought to invoke that standard, not identified any future prejudice it would suffer if the relevant claims were dismissed without prejudice, and cannot rely in this context on "past prejudice: that it incurred attorneys' fees and other costs in the past preparing to defend against the claim[s], including a deposition and other discovery and the filing of [its] summary judgment motion." *Spirit Realty, L.P. v. GH & H Mableton, LLC*, 227 F. Supp. 3d 291, 300 (S.D.N.Y. 2017) (finding no "plain legal prejudice"); *see Doe v. Grindr, LLC*, No. 21-CV-4589, 2022 WL 3139101, at *4 (E.D.N.Y. Aug. 5, 2022) (finding no "plain legal prejudice" because the defendant asserted no counterclaims and did not "explain how it would be prejudiced by a dismissal without prejudice").  Accordingly, "plain legal prejudice" under the first "line of authority" described in *Camilli* is not implicated here.

### 2.    The *Zagano* Factors Necessitate Dismissal With Prejudice

Applying the *Zagano* factors, however, the undersigned concludes that dismissal of the Withdrawn Claims with prejudice is warranted.  "The *Zagano* factors include: '(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss.'" *Kwan*, 634 F.3d at 230 (quoting *Camilli*, 436 F.3d at 123); *see Zagano*, 900 F.2d at 14.  No individual factor or combination of factors is dispositive.  *See Kwan*, 634 F.3d at 230.

***Diligence***.  "[T]he fact that plaintiff waited until the late stages of this action, after discovery was complete and a summary judgment motion was filed, certainly tips the scale towards requiring a dismissal with prejudice." *Resto-Otero v. Mohammad*, No. 17-CV-1115, 2019 WL 4544540, at *2

(N.D.N.Y. Sept. 19, 2019) (analyzing first *Zagano* factor). Indeed, Plaintiff first filed her motion to amend when the case had "been pending for nearly two years," Plaintiff did not "communicate any intent to dismiss h[er] claims to [Delta] or the Court" before Judge Kuntz set the summary judgment briefing schedule, and Plaintiff waited until *after* "summary judgment [briefing] was due to file h[er] motion." *George v. Pro. Disbosables Int'l, Inc.*, No. 15-CV-3385, 2017 WL 1740395, at *2 (S.D.N.Y. May 2, 2017); *see Heyliger*, 2019 WL 8491156, at *6 ("[P]laintiff waited to seek dismissal of the above-mentioned claims in response to defendants' motion for partial summary judgment, and there does not appear to be any reason why he was unable to request dismissal any earlier, which indicates a lack of diligence.").

 *Vexatiousness.* "Vexatiousness refers to instances in which the case was brought to harass the defendant, or the plaintiff had ill-motive." *Paulino v. Taylor*, 320 F.R.D. 107, 110 (S.D.N.Y. 2017) (internal quotations and citations omitted). Courts find ill-motive where the plaintiff "never had any intention of providing discovery in the case but nonetheless permitted the case to proceed . . .[;] filed duplicative actions relating to the same injury; or . . . assured the court it would proceed with its claims but then goes back on their word and seeks dismissal." *George*, 2017 WL 1740395, at *3 (internal quotations omitted).

 Plaintiff arguably was unduly vexatious in pursuing the claims she now seeks to withdraw because "it appears that [s]he only chose to maintain those claims until it became clear, upon [Delta's] motion for summary judgment, that [s]he could not prove them." *Heyliger*, 2019 WL 8491156, at *6; *see George*, 2017 WL 1740395, at *3 (finding plaintiff "evinced 'ill motive'" by maintaining his claims through the court setting a summary judgment briefing schedule but then seeking to withdraw the claims after briefing commenced). On the other hand, the Court is not required to find Plaintiff was unduly vexatious under these circumstances. *See Riley v. A.W. Chesteron Co.*, No. 05-CV-0668, 2006 WL 1373057, at *2 (N.D.N.Y. May 18, 2006) (declining to find plaintiff was unduly vexatious

by seeking to withdraw claims in response to a summary judgment motion); *Jewelers Vigilance Comm., Inc. v. Vitale Inc.*, No. 90-CV-1476, 1997 WL 582823, at *3 (S.D.N.Y. Sept. 19, 1997) (declining to find plaintiff was vexatious even though the court "disapprove[d] of Plaintiff's litigation tactics" where plaintiff moved to dismiss claims after discovery and summary judgment briefing). The undersigned views the second *Zagano* factor as "neutral," meaning it "has no bearing on whether dismissal should be with or without prejudice." *Resto-Otero*, 2019 WL 4544540, at *2; *see Jewelers Vigilance*, 1997 WL 582823, at *3 ("[T]he Court declines to label Plaintiff's conduct 'vexatious.' Nevertheless, this factor does not support Plaintiff's request to dismiss without prejudice."); *see also Britt v. Thermald Realty I, L.P.*, No. 13-CV-8289, 2014 WL 12772200, at *2 (S.D.N.Y. Nov. 6, 2014) (finding *Zagano* factors supported dismissal with prejudice even though "Plaintiff has arguably . . . not been unduly vexatious").

> ***Progress Of The Action And Potential Expense Of Relitigation.*** "Courts applying the *Zagano* factors frequently place the greatest emphasis on the efforts expended by the defendant in discovery and trial preparation and the corresponding prejudice the defendant would suffer if forced to relitigate." *Baldanzi v. WFC Holdings Corp.*, No. 07-CV-9551, 2010 WL 125999, at *4 (S.D.N.Y. Jan. 13, 2010); *see George*, 2017 WL 1740395, at *3 ("The extent to which a suit has progressed is considered by many courts in the Second Circuit to be of primary importance" (internal quotations omitted)). Progress of the litigation "is emphasized because it is often a strong indicator of whether the case has reached a prejudicial point—the key inquiry in evaluating a motion to dismiss without prejudice." *Paulino*, 320 F.R.D. at 111. "The standard for concluding that a suit has progressed far enough to weigh against dismissal [without prejudice] is high, and is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred." *Id.* (internal quotations omitted); *RQ Innovations, Inc. v. Carson Optical, Inc.*, No. 19-CV-3886, 2021 WL 1075185, at *5 (E.D.N.Y. Feb. 4, 2021) (internal quotations omitted), *report and*

*recommendation adopted*, 2021 WL 1062419 (E.D.N.Y. Mar. 18, 2021).  The third and fourth *Zagano* factors weigh heavily in favor of dismissal with prejudice because Delta "has expended considerable time and money to date defending this action" given it "prepared an extensive motion for summary judgment" and "there will undoubtedly be some additional expense associated with relitigation, even if minimal." *Resto-Otero*, 2019 WL 4544540, at *2-3; *see George*, 2017 WL 1740395, at *3 (finding the third and fourth *Zagano* factors favored dismissal with prejudice because plaintiff moved to withdraw claims after discovery closed and defendant briefed summary judgment, and dismissal without prejudice could subject defendant to additional litigation expense); *Britt*, 2014 WL 12772200, at *2 (same).

**Plaintiff's Explanation.**  Plaintiff provides no explanation for seeking to withdraw the relevant claims.  *See generally* Pl. Mem.  That circumstance weighs in favor of dismissal with prejudice.  *See Resto-Otero*, 2019 WL 4544540, at *3 (finding fifth *Zagano* factor supported dismissal with prejudice because "plaintiff has failed to offer any clear explanation for wanting to discontinue the action at this juncture"); *Emory v. New York*, No. 11-CV-1774, 2013 WL 1881009, at *3 (E.D.N.Y. May 6, 2013) (finding fifth *Zagano* factor supported dismissal with prejudice because "Plaintiffs have failed to proffer reasons why their 'voluntary' dismissal comes so late in the litigation").

In sum, dismissal without prejudice would be inappropriate under the *Zagano* factors. The undersigned therefore recommends that the Court dismiss the Withdrawn Claims with prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the undersigned recommends that the Court grant in part and deny in part the Motion by (1) denying Plaintiff leave to file the PFAC, and (2) dismissing the Complaint's first, second, third, and fourth causes of action—for violations of Title VI of the Civil Rights Act of 1964, the Federal Aviation Law, the New York Executive Law, and the New York Civil Rights Law—with prejudice.

## V.     OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to District Judge William F. Kuntz, II.  FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS.  *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED:**

Dated:  Central Islip, New York
          March 14, 2023

s/ Lee G. Dunst
_____
**LEE G. DUNST**
United States Magistrate Judge